## IN RE GUARDIANSHIP OF HARRY BUCK.[1]

### May 6, 1927.

### No. 25,996.

**Finding sustained that incompetent had not shown capacity to take control of his property.**

The conclusion of the trial court that the incompetent has not shown himself competent to take control of his property is sustained by the evidence.

Insane Persons, 32 C. J. p. 675 n. 75; p. 676 n. 1.

Harry Buck appealed to the district court for Dodge county from an order of the probate court, Cooper, J., denying his application to be restored to capacity. The case was heard by Senn, J., who also denied the application. This appeal is from an order denying the ward's motion for a new trial. Affirmed.

*F. A. Alexander*, for appellant ward.

*F. G. Sasse* and *R. A. Dunnette*, for respondent guardian.

[1]Reported in 213 N. W. 898.

TAYLOR, C.

When about four years of age Harry Buck was taken from the state school at Owatonna and adopted by Hans and Clara Buck who lived on a farm of 91 acres near Hayfield in Dodge county. Hans Buck died in 1918 and Clara Buck in 1919. They had no natural children and the farm together with personal property of the value of about $5,000 was assigned by the probate court to Harry, then 16 years of age. On Harry's petition John Gronquist was appointed guardian of his person and estate during his minority. When Harry became of age in January, 1924, Gronquist filed his final account as guardian and was discharged.

During the time that Gronquist was his guardian, Harry wandered over a considerable portion of the west and southwest, "riding the bumpers" from place to place. He obtained money from Gronquist from time to time, and had obtained amounts aggregating the sum of $1,900 which the probate court had not authorized Gronquist to pay to him, and which Gronquist was unwilling to report to the court. Harry gave Gronquist his promissory note for this sum and Gronquist omitted these payments from his final account.

Some three years before he became of age, the date does not appear, Harry married Gertrude Dessonville. On the same day on which Gronquist was discharged as guardian, Harry made a petition to the probate court for the appointment of Theodore Dessonville, his wife's father, as guardian of his estate, assigning as the ground therefor that he deemed himself incompetent to care for and conserve the property. The court made the appointment on March 12, 1924. Harry and his wife had been living with her parents for some months. They moved upon the farm for the purpose of operating it. Harry became ill and went to a hospital, and apparently never returned to the farm. His wife also became ill and went to a hospital, and then returned to her parents and died not long afterward. She seems to have consulted an attorney about procuring a divorce but the suit had not been brought at the time of her death.

After his daughter returned home, and on August 9, 1924, Theodore Dessonville filed his resignation as guardian together with his final account and asked that another guardian be appointed in his

place. The court allowed the account and appointed Ole O. Distad as guardian of the estate. He is still serving in that capacity.

In August, 1925, Harry applied to the probate court to be restored to capacity. That court denied the application and he appealed to the district court. That court also denied the application and a further appeal brings the matter before this court.

There is evidence that he was addicted to drink and that he associated with a professional gambler. In September, 1924, he pleaded guilty to the theft of an automobile tire and served a sentence of 60 days in the county jail. In the early summer of 1925, he pleaded guilty to the charge of transporting intoxicating liquor and served another sentence in the county jail. All that is left of his property is the farm, and a mortgage of $2,500 has been placed on that to take care of his debts. In fairness to him it should be said that these debts, or the major part of them, were incurred for stock and equipment for the farm when he and his wife moved upon it, and for doctor and hospital bills for his wife and himself. He remained on the farm about four months after taking possession of it. Except in this instance, it does not appear that he ever made any attempt to manage, use or look after his property. He seems to have roamed about the country, to have had associates not of the best character, and to have been addicted to drink. His request to be restored to the control of his property is based on the claim that he has mended his ways—that he no longer gets drunk, and no longer associates with evil companions, and is disposed to go to work and make a living for himself. The objection urged is that he is a spendthrift. The probate court in the order denying the application said that the court deemed it unsafe to turn the property over to him unless he had changed, but if he would show by his conduct that he had abandoned his bad habits and was able to support himself, the court, in six months or a year, would welcome an application to turn the property over to him.

When released from jail in September, 1925, Harry started to work for a man who was constructing a ditch. He worked about ten days and received his pay on October 3. That night he disappeared without informing his employer that he intended to quit.

In April, 1926, he returned to Hayfield to attend the hearing in district court. He says that when he left in October he went to Iowa and worked for farmers at various places in Iowa during the fall and winter and earned $180 in all. In December, however, he wrote the guardian for money saying that he was "out of a job and broke." He says that while away this time he did not drink or associate with his former questionable companions, but admits that in order to get back for the hearing he rode the "bumpers" from Mason City, Iowa, to Hayfield. On returning he obtained money from the guardian for needed clothing worn at the hearing. The only evidence of his change of conduct is his own testimony, for the people of Hayfield did not know where he was during this absence, and of course had no personal knowledge of his doings, and hearsay evidence was properly excluded.

The probate court, which has had charge of the estate ever since the death of Harry's adoptive parents and is familiar with the entire situation, was of opinion that he had not yet shown himself competent to take control of the property. The district court, also familiar with the situation, was of the same opinion. The evidence will not warrant us in saying that they reached an erroneous conclusion.

We find no other questions of controlling importance or which require special mention.

Order affirmed.